No. 23-55312

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONECIA AUGUSTUS, an individual;
MARK AUGUSTUS, an individual

Plaintiffs - Appellants
v.

COUNTY OF LOS ANGELES; WILLIAM SPILLER, JR., individual and de-facto official capacity; SHAUNTA MONTGOMERY, individual and de-facto official capacity; STATE OF CALIFORNIA

Defendants - Appellees

Appeal from the Central District of California
Case no. 2:20-cv-11255-FLA-RAO
Hon. Judge Fernando L. Aenlle-Rocha
U.S. District Judge

## APPELLANTS' OPENING BRIEF

G. Scott Sobel, Esq.
Law Office of G. Scott Sobel
1136 South Shenandoah Street, Suite 101
Los Angeles, CA 90035-2268
323-377-4000
Fax: 888-863-5630
Email: gscottsobel@gmail.com
Attorney for Appellants

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................2

TABLE OF AUTHORITIES ..........................................................4

APPELLANTS' OPENING BRIEF ................................................6

I.    INTRODUCTION AND FACTUAL BACKGROUND ...........6

II.   JURISDICTIONAL STATEMENT ....................................9

III.  QUESTIONS PRESENTED ..............................................10

IV.   STANDARD OF REVIEW .................................................11

V.    ARGUMENT ......................................................................12

   A.   The District Court Erred by Dismissing the Case Against County............12

      1.   Legal Standard for Due Process / *Benavidez* Judicial Deception Claim........12

      2.   Plaintiffs Allege Judicial Deception, and Allege County's Policy of Judicial Deception ...............................................................13

      3.   Summary of Crucial Facts Giving Rise to a Reasonable Inference of County's Policy of Judicial Deception, Yet Ignored by the District Court ............................14

      4.   Legal Standard to Allege an Unconstitutional Policy ....................................15

      5.   The District Court Materially Misstated the Legal Standard to Properly Allege an Unconstitutional County Policy ...................................................................17

      6.   Conclusion to Dismissal of County ...............................19

   B.   The District Court Erred by Dismissing the Case Against William Spiller, Jr. and Shanta Montgomery...............................................................20

      1.   The FAC Satisfies a § 1983 Due Process Claim Under *Benavidez* ................20

      2.   Defendants' Misrepresentations ....................................20

      3.   Defendants' Key Omission – Knowledge and Concealment That DCFS Had Cleared Mark Augustus Five Days Prior ................................22

      4.   Both Spiller and Montgomery are De-Facto State Actors Under the Joint-Action Test ............................................................23

      5.   Direct Engagement of County's Child Abduction Unit Is Joint Action Under *Howerton v. Gabica* ........................................................23

6.      This Case is Distinguishable from Other Cases Where Joint Action Was Denied ...................................................................................................25

7.      This Case is Very Similar to Other Cases in Which Joint Action Was Found 26

8.      Under *Lugar*, Spiller and Montgomery are Willful Participants in Joint Action with County ..............................................................................27

9.      Spiller Seemingly Admits the Policy to Defraud ...........................................30

10.     Spiller and Montgomery Have a Symbiotic Relationship With County ..... 30

11.     Conclusion to De-Facto State Actor ...........................................................32

C.   The District Court Erred by Dismissing the Constitutional Challenge to Cal. Probate Code § 2250 (e)(1) ........................................................................32

1.      Prima Facie Showing That the Statute is Facially Unconstitutional ..............32

2.      Prima Facie Showing That the Statute Is Unconstitutional as Applied to Mark and Donecia Augustus on December 11, 2018 .......................................34

3.      The District Court Did Not Reach the Merits of the Constitutional Challenge to the Statute ..........................................................................................35

4.      Conclusion to *Ghazali* Factors .......................................................38

VI.      OVERALL CONCLUSION AND RELIEF REQUESTED................38

VII.      CERTIFICATE OF COMPLIANCE....................................................40

APPELLANTS' OPENING BRIEF

# TABLE OF AUTHORITIES

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV ..................................................................................31

U.S. SUPREME COURT CASES

*Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 219, 132 L. Ed. 2d
    158, 115 S. Ct. 2097 (1995) ........................................................11

*Ashcroft v. Iqbal*, 556 U.S. ..........................................................................13

*Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 909-10, 106
    S. Ct. 2317, 90 L. Ed. 2d 899 (1986)..........................................12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 ......................................................18

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961) ...................31

*Dennis v. Sparks*, 449 U.S. 24, 28 (1980) ......................................................27

*Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S. Ct. 995, 31 L. Ed. 2d 274
    (1972) ............................................................................................12

*Lugar v. Edmondson Oil* Co., 457 U.S. 922, 923, 102 S. Ct. 2744, 2746
    (1982) .......................................................................................28, 29

*Miller v. Johnson*, 515 U.S. 900, 920, 115 S. Ct. 2475, 132 L. Ed. 2d 762
    (1995) ............................................................................................12

*Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694-95 (1978) .......13, 17, 18

*Polk County v. Dodson*, 454 U.S. 312, 325, (1981)....................................25, 26

*Tower v. Glover*, 467 U.S. 914, 919–20 (1984)..............................................26

*Troxel v. Granville*, 530 U.S. 57, 60, 120 S. Ct. 2054, 2057 (2000)............11, 35

FEDERAL CASES

*Anthony v. United States*, 2022 U.S. Dist. LEXIS 180693, *1 ......................18

*Ball v. Massanari*, 254 F.3d 817 ...................................................................11

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021) ..... passim

*Duncan v. Becerra*, 970 F.3d 1133, 1164 ......................................................12

*Ellins v. City of Sierra Madre,* 710 F.3d 1049 ..............................................13

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263,
    1267 (11th Cir. 2003) ...................................................................27

*Fonda v. Gray*, 707 F.2d 435 ........................................................................24

*Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) ........................................36

*Howerton v. Gabica,* 708 F.2d 380, slip op. 2118 (9th Cir. 1983) ................23

*Kolbe,* 849 F.3d ....................................................................................12

*Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 95 (3d Cir. 1984)...................31

*Schueneman v. Arena Pharm., Inc.,* .............................................................19

*Strata Title, L.L.C. v. Pure Country Tower, LLC* (*In re Strata Title, L.L.C.*), 2014 Bankr. LEXIS 712, *1...........................................................21

*Texas Partners v. Conrock Co.,* 685 F.2d 1116 ............................................18

*Trevino v. Gates,* 99 F.3d 911 ......................................................................17

*Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010)......16, 17

*Zucco Partners, LLC v. Digimarc* Corp., 552 F.3d 981, 989 (9th Cir. 2009).......................................................................................................19

### STATE CASES

*In re Claudia S*., 131 Cal. App. 4th 236, 237 (2005) .....................................6

*Love v. State Dept. of Education*, 29 Cal. App. 5th 980 ................................11

### STATUTES

28 U.S.C. § 1291 ...........................................................................................9

28 U.S.C. § 1331 ...........................................................................................9

42 U.S.C. § 1983 ....................................................................9, 16, 23, 31

Fed. R. Civ. P. 12(b)(6)................................................................................15

Fed. R. Civ. P. 56(a)....................................................................................18

### OTHER AUTHORITIES

Local Rule 7-12 ...........................................................................................35

## APPELLANTS' OPENING BRIEF

## I.    INTRODUCTION AND FACTUAL BACKGROUND

> Parents are entitled to due process notice of … court proceedings affecting the care and custody of their children and the absence of due process notice to a parent is a **fatal defect** in the … **court's jurisdiction.**

[*In re Claudia S*., 131 Cal. App. 4th 236, 237 (2005), bolding added]

> To support a 42 U.S.C. § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made **false statements or omissions** that were **material** to the finding [involving child custody]. A plaintiff who provides direct evidence of false statements can allege deliberate fabrication of evidence in violation of constitutional due process guarantees.

[*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1140 (9th Cir. 2021), ("*Benavidez*" bolding added]

Plaintiffs / Appellants Donecia and Mark Augustus are the legally married, kind and loving biological parents of Sasha Milan Augustus. Recently turned 18, at all relevant times, Sasha was a minor child. [ER-231, orig. FAC ¶ 1]

On December 11, 2018, while working as agents of the Los Angeles County Child Abduction Unit, Defendants William Spiller Jr. (a secretly-appointed minor's counsel) and Shaunta Montgomery (Donecia's sister) secretly went to court and fraudulently obtained a Letters of Temporary Guardianship order over Sasha. [ER-231, orig. FAC ¶ 2]

Ms. Montgomery and Mr. Spiller conspired and fraudulently concealed the contents of a DCFS Report from the Superior Court, despite admitting on the record that it had been obtained. [ER-231, orig. FAC ¶ 3]

The actions of Defendants constituted a fraud upon the court because (a) the Letters of Temporary Guardianship order was made at a secret, unnoticed (thus unconstitutional) hearing; (b) at the secret hearing, Defendants actively concealed the fact that five days prior Mark Augustus was exonerated by DCFS of the one

vague allegation against him; (c) the Petition for Temporary Guardianship was entirely founded on that one vague allegation; (d) in addition to the fraudulent concealment of the DCFS Report, Defendants supported their efforts by making numerous intentional misrepresentations to the Superior Court, including falsely stating that the Augustuses had been put on Notice, falsely stating that Mark Augustus was "on the lam" and avoiding the proceedings, falsely stating that the Augustuses were "homeless." [ER-231, orig. FAC ¶ 4]

It is undisputed that no Proof of Service was filed indicating that either Donecia or Mark Augustus had been served Notice of the fateful hearing. In fact, they were never served, and had no idea that any hearing was taking place. The Superior Court "dispensed with" the Notice requirements by invoking Cal. Probate Code § 2250 (e)(1), which statute purportedly allows the Superior Court to do away with Notice for "good cause." Although no good cause was explicitly stated, evidently the Court relied on the Defendants' intentional misrepresentations regarding the Augustuses being "on the lam" and "homeless."

But for the Superior Court's reliance on Defendants' material omission and intentional misrepresentations, the Letters of Temporary Guardianship would not have been issued – not on December 11, 2018, and not ever. [ER-231, orig. FAC ¶ 4]

Later in the afternoon of December 11, 2018, Donecia showed up at Santa Monica High School to pick up her daughter Sasha. However, Shaunta Montgomery also showed up, now armed with the fraudulently-obtained Letters of Temporary Guardianship order, and backed up by the threat of force inherent in the authority of the Los Angeles County Child Abduction Unit. [ER-231, orig. FAC ¶ 5]

Shaunta showed the Letters of Temporary Guardianship order to Donecia. Fearing the authority of the government, believing that government agents are authorized to use force to carry out court orders, Donecia reluctantly acquiesced

and allowed Shaunta to take Sasha into custody. Fear of government force is the only reason Donecia Augustus allowed Shaunta Montgomery to take Sasha on December 11, 2018. [ER-231, orig. FAC ¶ 6]

Plaintiffs / Appellants were stripped of their fundamental constitutional right to parent because Defendants secretly appeared at an unnoticed hearing and obtained Letters of Temporary Guardianship based on the fraudulent concealment of a DCFS Report exonerating the father, and based on the intentional misrepresentation that Plaintiffs had been served and were avoiding the proceedings. [ER-231, orig. FAC ¶ 2]

These facts shock the conscience. A more obvious violation of Due Process is difficult to imagine. Relying on the legal standard for a civil rights case based on Judicial Deception as articulated in *Benavidez, supra* 993 F.3d 1134 at 1146 ("*Benavidez*"), Plaintiffs brought action under 42 U.S.C. § 1983, alleging that their fundamental right to family unity was violated under color of law, without the substantive Due Process promised by U.S. Const. Amend. XIV.

Plaintiffs also bring a *Monell* claim, alleging County of Los Angeles has a Policy under which Judicial Deception may be employed as a false pretext on which to appoint a Minor's Counsel and thereby engage in unjust enrichment.

Plaintiffs also bring facial and as-applied challenges to the constitutionality of Cal. Probate Code § 2250 (e)(1), arguing that the statute impermissibly allows the Superior Court to "dispense with" Notice requirements, in clear violation of the most basic tenants of Due Process.

The District Court dismissed the *Benavidez /* Due Process claim by finding that Defendants Spiller and Montgomery are not de-facto State Actors under the Joint Action test, while not addressing the issue of Judicial Deception at all. Appellants will show that the Joint Action test is well-satisfied here, and that the District Court simply ignored the pertinent facts. [ER-3 et. seq.]

The District Court dismissed the *Monell* claim by finding that Plaintiffs fail to allege a pattern of conduct sufficient to establish that this is anything more than an isolated incident. Appellants will demonstrate that the District Court materially misstated the law, relying on an analogy to a case where a Summary Judgment was affirmed, rather than a Motion to Dismiss as here.

The District Court dismissed the constitutional challenges to Cal. Probate Code § 2250 (e)(1), never reaching the substantive argument. Rather, the District Court found that Plaintiffs had consented to the dismissal by failing to timely file an Opposition to State's Motion to Dismiss.

The District Court denied Plaintiffs' Motion for Leave to File Untimely Opposition to State's Motion to Dismiss, despite the fact that all Motions to Dismiss were still pending, the Court had not ruled on any of them, and ultimately would not rule for *seven more months.* Appellants will show that the Constitutional challenge should be allowed to go forward, as the law favors adjudication on the merits wherever possible.

For the reasons that follow, this Court should reverse and remand the case back down to the District Court, instructing the District Court to deny the Motions to Dismiss, and Order Defendants to file and Answer to the Complaint by date certain. At the very least, this Court should find that Plaintiffs could successfully amend the Complaint.

## II.    JURISDICTIONAL STATEMENT

The United States District Court for the Central District of California ("District Court") had jurisdiction over the claims of Appellant pursuant to 28 U.S.C. § 1331, in that this action arises under the U.S. Constitution, and under 42 U.S.C. § 1983.

Jurisdiction for this Honorable Ninth Circuit Court of Appeals is given at 28 U.S.C. § 1291, in that Plaintiffs are appealing the District Court's 3-24-2023 Order Dismissing the actions as to all Defendants with prejudice [ER-3].

## III.   QUESTIONS PRESENTED

Did the District Court err by dismissing a civil rights case alleging a Due Process violation, where custody of minor child was taken from parents at a hearing for which Notice was undisputedly not served upon parents?

Under the standard for Judicial Deception articulated in *Benavidez, supra*, 993 F.3d 1134 at 1146, did the District Court err by dismissing a civil rights case alleging a Due Process violation, where custody of minor child was taken from parents at a Temporary Guardianship hearing where Defendants knew, but fraudulently concealed, the material fact that father had been officially cleared of the one vague allegation against him *five days prior*?

Under *Benavidez,* did the District Court err by dismissing a civil rights case alleging a Due Process violation, where custody of minor child was taken from parents at a Temporary Guardianship hearing where Defendants falsely stated that parents were "on the lam" and "avoiding the proceedings," when in fact, they simply had not been served?

Did the District Court err by improperly applying a summary judgment standard (instead of the standard for a Motion to Dismiss), which led to the erroneous finding that Plaintiffs do not plausibly allege a Policy of Los Angeles County under which Judicial Deception may be employed as a false pretext to appoint a Minor's Counsel?

Did the District Court err by finding that Minor's Counsel William Spiller Jr. and Shaunta Montgomery are not de-facto State Actors for civil rights purposes?

Do Appellants make a prima facie showing that Cal. Probate Code § 2250 (e)(1) is unconstitutional, as it allows the Superior Court to "dispense with" Notice for no stated reason at all?

Did the District Court err by not deciding the constitutional challenge to Cal. Probate Code § 2250 (e)(1) on the merits?

## IV.  STANDARD OF REVIEW

The appropriate standard of review for this entire appeal is strict scrutiny. The right to family unity is squarely at issue in every aspect of this appeal, and family unity is a fundamental constitutional right:

> O'Connor, J., announced the judgment of the [U.S. Supreme] Court and, in an opinion joined by Rehnquist, Ch. J., and Ginsburg and Breyer, JJ., expressed the view that (1) the Fourteenth Amendment's due process clause protected **the fundamental right of parents** to make decisions concerning the care, custody, and control of their children.

[*Troxel, supra,* 530 U.S. 57 at 60, bolding added]

Thomas, J., concurring in the judgment, expressed the view that the appropriate standard of review for the alleged infringement of fundamental constitutional rights was **strict scrutiny.** [*Id*]

The Ninth Circuit is in accord:

> If the statute ... burdens the exercise of a constitutional right, then courts must apply **strict scrutiny**, and ask whether the statute is narrowly tailored to serve a compelling governmental interest. See *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 219, 132 L. Ed. 2d 158, 115 S. Ct. 2097 (1995).

[*Ball v. Massanari*, 254 F.3d 817, 823, bolding added]

Likewise, the California Courts concur:

> Where the state infringes on a **fundamental constitutional right**, **strict scrutiny** applies.

[*Love v. State Dept. of Education*, 29 Cal. App. 5th 980, 980, bolding added]

Citing the U.S. Supreme Court, the Ninth Circuit explains:

> Strict scrutiny is the "most rigorous and exacting standard of constitutional review," and requires that a state law be "narrowly tailored to achieve a compelling interest." *Miller v. Johnson*, 515 U.S. 900, 920, 115 S. Ct. 2475, 132 L. Ed. 2d 762 (1995); see also *Kolbe,* 849 F.3d at 133. "[I]f there are other, reasonable ways to achieve [a compelling state purpose] with a lesser burden on constitutionally protected activity, a State may not choose the way of greater interference. If it acts at all, it must choose 'less drastic means.'" *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 909-10, 106 S. Ct. 2317, 90 L. Ed. 2d 899 (1986) (citing *Dunn v. Blumstein*, 405 U.S. 330, 343, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972))

[*Duncan v. Becerra*, 970 F.3d 1133, 1164]

## V.  ARGUMENT

### A.  <u>The District Court Erred by Dismissing the Case Against County</u>

#### 1.  Legal Standard for Due Process / *Benavidez* Judicial Deception Claim

The District Court properly summarizes the complaint against County and the other Defendants as one arising under the constitutional right to be free of judicial deception, found in the Due Process clause, as articulated in *Benavidez*:

> Here, the essence of Plaintiffs' claims against the County is that they were deprived of their constitutional right to be free of deception in the context of civil child custody proceedings.  See *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021) ("*Benavidez*") ("We have previously recognized a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases.")

[ER-9, orig. 7:22-27]

The District Court would have done well to quote the rule statement provided in *Benavidez,* where the Ninth Circuit holds that:

> To support a 42 U.S.C. § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made **false statements or omissions** that were **material** to the

finding [involving child custody]. A plaintiff who provides direct evidence of false statements can allege deliberate fabrication of evidence in violation of constitutional due process guarantees.

[*Benavidez, , supra* 993 F.3d 1134 at1140]

Here, Plaintiffs most certainly provide direct evidence of both false statements *and* material omissions, see *infra* in headnote #3 below. Citing *Ashcroft v. Iqbal*, 556 U.S. ("*Iqbal*") at 678, the District Court correctly states the pleading standard requiring that "Plaintiffs must plead more than conclusory statements that such a policy exists and that the County acted pursuant to that policy; rather, Plaintiffs must plead facts from which the existence of such policy can plausibly be inferred." [ER-12-13, orig. 10:27-11-4]. Likewise, Appellants do not quarrel with the District Court's explanation that:

> …plaintiffs must establish that the local government had a **deliberate policy, custom, or practice that was the moving force behind the constitutional violation they suffered**." *Id.* (internal quotation marks, brackets, and citations omitted); *Ellins v. City of Sierra Madre,* 710 F.3d 1049, 1066 (9th Cir. 2013) ("[M]unicipalities are subject to damages under § 1983 in three situations: when the plaintiff was injured pursuant to an expressly adopted official policy, a longstanding practice or custom, or the decision of a 'final policymaker.'"); see also *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694-95 (1978).

[ER-10, orig. 8:9-16, bolding added]

## 2. Plaintiffs Allege Judicial Deception, and Allege County's Policy of Judicial Deception

Plaintiffs do indeed allege a longstanding policy and custom under which County and County-appointed Minor's Counsel may intentionally deceive the court in order to establish a false pretext to maintain a probate case, thereby enriching said Minor's Counsel ("Policy"). [ER-238, orig. ¶ 40; See also ER-233, orig. FAC ¶ 16 (…the "policy of permitting false and fraudulent representations to be made to a Court of law as a pretext for seizing children, and as a pretext to pay for the

services of minor's counsels, so as to obtain increased funding…"); ER-244, orig. FAC ¶ 67; ER-247, orig. FAC ¶ 79; ER-248, orig. FAC ¶ 83-85].

### 3. Summary of Crucial Facts Giving Rise to a Reasonable Inference of County's Policy of Judicial Deception, Yet Ignored by the District Court

Contrary to the glaring omissions in the District Court's Order of dismissal, the FAC certainly alleges specific facts that permit a reasonable inference that the Policy exists. For example, Defendants arranged for a secret, unnoticed hearing to take place [ER-231, orig. FAC ¶ 4]; Defendants deliberately **concealed** DCFS Report and **concealed** the fact that five days prior Mark Augustus was exonerated by DCFS of the one vague allegation against him [ER-231, orig. FAC ¶ 4].

Furthermore, Defendant William Spiller lied to the Superior Court, falsely stating that Mark Augustus was "on the lam" and "avoiding these proceedings," knowing full well that the Augustuses simply had not been served notice of the hearing. [ER-231, orig. FAC ¶ 4].

Concealing Mark Augustus's innocence and falsely portraying him as avoiding the proceedings is exactly the type of conduct, i.e. material misrepresentations and material omissions described in *Benavidez,* holding that this gives rise to a civil rights claim.

Irrefutable evidence that County implements the Policy (allowing Judicial Deception) occurred on February 19, 2021, in the District Court case itself, when County filed its Motion to Dismiss the original Complaint. In that paper, County falsely claims that "Co-Defendant Montgomery … was awarded the minor's permanent guardianship on May 13, 2019 by Co-Defendant Honorable Judge Small." [ER-248, citing Dkt. #25, MTD 15:13-16].

County's statement that Shaunta Montgomery was awarded a permanent guardianship is categorically false, and the falsity is judicially noticeable. County committed Judicial Deception in *this very case*.

In fact, 18STPB09873 – the Superior Court guardianship proceeding that County falsely claimed had been finally decided – was at that time set for a Court trial to begin on March 17, 2021. In July 2021, Sasha turned 18 years old. No permanent guardianship was ever awarded regarding Sasha, despite 2 ½ years for Petitioner (here Defendant and Appellee) Shaunta Montgomery to have done so. [*Id*]

That the County of Los Angeles came to the United States District Court and made such an obvious and judicially noticeable misrepresentation constitutes clear evidence that County has a policy and custom to defraud courts of law, i.e. the Policy. Nothing else explains it.

All of the above *facts* are conspicuously absent from the District Court's Order of Dismissal. By ignoring these facts, and reciting only the FAC's reasonable inferences as if they were unsupported *by* the facts, the District Court arrives at the erroneous conclusion that "Plaintiffs have not alleged facts that, taken as true, are sufficient to infer plausibly the existence of a County 'policy of permitting false and fraudulent representations to be made to a Court of law as a pretext for seizing children.'" [ER-11, orig. 9:11-13].

This Court should find that the misrepresentations and material omissions by Defendants plausibly give rise to the reasonable inference of County's Policy to allow Judicial Deception.

### 4. Legal Standard to Allege an Unconstitutional Policy

After *Twomly / Iqbal*, Courts have explained that allegations of *Monell* liability will be sufficient for purposes of Fed. R. Civ. P. 12(b)(6) where they:

(1) identify the challenged policy / custom;

(2) explain how the policy /custom is deficient;

(3) explain how the policy / custom caused the plaintiff harm; and

(4) reflect how the policy / custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur."

[*Young v. City of Visalia*, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010)]

As to (1), Plaintiffs identify the Policy as "the policy of permitting false and fraudulent representations to be made to a Court of law as a pretext for seizing children, and as a pretext to pay for the services of minor's counsel, so as to obtain increased funding, whether that increased funding derives from federal funds under Title IV, or from any other source(s)." [ER-233, orig. FAC ¶ 16; see also ER-249, orig. FAC ¶ 87; see also ER-93, orig. FAC ¶ 93].

As discussed above, Defendants put on a secret, unnoticed hearing at which Defendants deliberately concealed the exoneration of Mark Augustus in the DCFS Report issued 5 days prior, falsely stated that he was "on the lam," and falsely stated that the Augustuses had been served Notice. All of these facts constitute Judicial Deception as defined in *Benavidez,* which Ninth Circuit case unequivocally holds that such Judicial Deception in a child custody case gives rise to a § 1983 claim.

But for the existence of a Policy that allows and encourages Judicial Deception, County would have removed William Spiller as Minor's Counsel the instant County learned these facts, and certainly would not have "doubled down" by falsely stating that Shaunta Montgomery had been awarded a permanent guardianship, when she had not, and County and all Defendants *knew* that she had not.

As to (2), County's Policy is deficient purely as a matter of law because each exercise of it constitutes a fraud upon the court, and causes constitutional injury, financial injury, and emotional injury upon its intended helpless victims.

As to (3), County's Policy caused Plaintiffs harm by destroying their fundamental right to family unity without due process. [See ER-249-254, orig. FAC ¶¶ 86-111] This constitutional injury is the actual and proximate cause of Plaintiffs emotional and financial injuries. [See ER-261, orig. FAC Prayer].

As to (4), constitutional injury was obvious and likely to occur because

parenting is a fundamental right, while County's Policy is predicated on deliberately destroying that right upon fabricated falsehoods. [See e.g. ER-233, orig. FAC ¶ 16]

### 5. The District Court Materially Misstated the Legal Standard to Properly Allege an Unconstitutional County Policy

Instead of a Due Process analysis under *Benavidez,* or an examination of the elements of a *Monell* claim under *Young v. City of Visalia,* the District Court materially misstates the law by citing and relying upon *Trevino v. Gates,* a case which "affirmed the grant of **summary judgment [not a Motion to Dismiss]** to defendants, City of Los Angeles, California and city councilperson." [*Trevino v. Gates,* 99 F.3d 911, 915 ("*Trevino*"), bolding added].

The fact that in *Trevino,* the Ninth Circuit affirmed a Summary Judgment - *not* a Motion to Dismiss - makes all the difference in the world, as we shall see in reviewing the passage relied upon by the District Court here:

> Absent a formal governmental policy, a plaintiff must show a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (citation omitted). "The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" Id. (quoting *Monell*, 436 U.S. at 691). "**Liability for improper custom may not be predicated on isolated or sporadic incidents**; **it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy**." *Id.* (citations omitted).

[ER-10, orig. 8:17-20, bolding added]

Here, in this case, when the time comes, Discovery will lead to admissible evidence that this case is *not* an isolated or sporadic incident. Rather, a pattern of Judicial Deception involving numerous other cases, past and present, will emerge. Clearly, Plaintiffs must be allowed to commence and to complete Discovery, which in turn requires that this Order of Dismissal must be reversed.

If the District Court was correct in dismissing this case now, at the pre-answer stage, then it would have been able to cite a similar case affirming the grant of a Motion to Dismiss based on lack of evidence for a pattern of similar violations, and it would not have needed to instead disingenuously rely on a case affirming a Summary Judgment. At this juncture, it is worth noting the rule on Summary Judgment:

> A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.

[*Anthony v. United States*, 2022 U.S. Dist. LEXIS 180693, *1, citing Fed. R. Civ. P. 56(a)].

The Ninth Circuit has long held that completing discovery is a necessary prerequisite of dismissing a case on Summary Judgment. For example:

> Summary judgment was reversed for being an abuse of discretion and premature because a stay of discovery issued prior to the summary judgment prevented resolution of possible genuine issues of material fact

[*Texas Partners v. Conrock Co.,* 685 F.2d 1116, 1117]

The factual allegations of the complaint need only "plausibly suggest an entitlement to relief." [*Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951 (2009)] Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that **discovery will reveal evidence**" to support the allegations. [*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548, ("*Twombly*") bolding added]

Plaintiffs would agree that, should Discovery in this case fail to produce evidence that the Judicial Deception here was nothing more than a sporadic or isolated event, then Summary Judgment on a *Monell* claim may be appropriate. [1] But it would be a gross miscarriage of justice to allow the District Court to apply

---

[1] Without comment on Due Process / *Benavidez*, a different standard.

the post-discovery legal standard of Summary Judgment now, when this case is at the pre-answer stage, and was challenged in a Motion to Dismiss.

In a Motion to Dismiss, the Court assumes all factual allegations in the FAC are true and construes any inferences arising from those facts in the light most favorable to Plaintiffs / Appellants. [See, e.g., *Schueneman v. Arena Pharm., Inc.,* 840 F.3d 698, 704 (9th Cir. 2016) (restating generally-accepted principle that "[o]rdinarily, when we review a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we accept a plaintiff's allegations as true 'and construe them in the light most favorable' to the plaintiff" (quoting *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 989 (9th Cir. 2009)].

### 6. Conclusion to Dismissal of County

Therefore, this Court should find that the District Court erred by ignoring crucial facts that, when considered, create a reasonable inference that Defendants committed Judicial Deception (satisfying *Benavidez),* and that County has a Policy which allows for Judicial Deception as a pretext to pay court-appointed counsel (satisfying *Monell*).

This Court should also find that the District Court erred by applying the legal standard governing a Summary Judgment rather than correctly applying the legal standard governing a Motion to Dismiss. Had the District Court applied the correct legal standard, it would not have found that the pleading standard requires Plaintiffs to allege County practices of sufficient duration, frequency and consistency, only that there is a reasonable expectation that Discovery will produce such evidence. [*Twombly, supra*].

At the bare minimum, this Court should find that Plaintiffs can, in an amended complaint, allege numerous other pending and past cases involving Judicial Deception as a false pretext to pay Minor's counsel William Spiller, and County's knowledge of such.

**B.** <u>**The District Court Erred by Dismissing the Case Against William Spiller, Jr. and Shanta Montgomery**</u>

**1. The FAC Satisfies a § 1983 Due Process Claim Under *Benavidez***

First, it worth noting that the District Court rejected Defendant Spiller's argument that this case should be dismissed under the *Rooker-Feldman* doctrine. Citing *Benavidez, supra,* 993 F.3d 1134, the District Court agrees with Plaintiffs that action regarding alleged misrepresentations by county employees in juvenile court proceedings do not constitute a "de facto appeal" of state court orders and not barred under *Rooker-Feldman*. [ER-14, orig. 12:8-13:20]

However, it is most troubling that the District Court fails to consider the most important holding in *Benavidez,* which holding is a clear rule statement, and directly on point here:

> To successfully allege a violation of the constitutional right to be free from judicial deception, the plaintiff must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.

[*Benavidez, supra,* 993 F.3d 1134 at 1140]

**2. Defendants' Misrepresentations**

As to (1), the FAC alleges both intentional misrepresentations *and* a material omission. Clearly Spiller and Montgomery made misrepresentations to the Superior Court – falsely stating that the Augustuses had been served Notice of the Hearing for Temporary Guardianship, when they had not. [ER-237, orig. FAC ¶ 34].

Instead, and according to County's policy and custom, Mr. Spiller proceeded to falsely state that Donecia and Mark Augustus had been homeless (completely false, they have never been homeless or anything close); that Mark Augustus was "on the lam" and "avoiding the proceedings" (completely false, he hadn't been served Notice, and neither had Donecia); that efforts had been made to notify

Donecia and Mark Augustus (completely false and nonsensical, for Sasha's parents had no reason to avoid the hearing, knowing that Mark Augustus had already been cleared of the allegation). [ER-238, orig. FAC ¶ 40]

The fundamental components of due process are the right to be heard after notice reasonably calculated under the circumstances to apprise a party of the pendency of a matter, and adequate to afford that party of an opportunity to object. [*Strata Title, L.L.C. v. Pure Country Tower, LLC* (*In re Strata Title, L.L.C.*), 2014 Bankr. LEXIS 712, *1]

For her part in the Judicial Deception, Ms. Montgomery was present at the December 11, 2018 secret hearing, but, for reasons unknown, was not sworn in and not placed under oath. The Court enquired of Ms. Montgomery as to whether Donecia and Mark Augustus were served Notice. Suspiciously, Ms. Montgomery proffered a proof of service – not for the relevant December 11 hearing - but for a then-upcoming January 9th hearing, thus indicating that she understood the concept and requirement for proof of service of Notice to the parents. [ER-241, orig. FAC ¶ 52]

When Superior Court Judge May asked Ms. Montgomery about whether Donecia and Mark Augustus knew she "was coming in today" (December 11, 2018), Ms. Montgomery falsely stated "Yes". In fact, Donecia and Mark Augustus did not know about the hearing, or else they would have been there. The fact that Donecia and Mark Augustus subsequently appeared dozens of times over the next 2 ½ years in the ensuing, ultimately futile guardianship proceeding lays waste to any idea that Plaintiffs were avoiding anything. [ER-241, orig. FAC ¶ 53]

According to the scheme with Mr. Spiller and County, and presenting no evidence, Ms. Montgomery **falsely stated** that she "left a message on the voice mail", and that they were "sent an email". Undisputedly no proof of service was filed. Undisputedly Ms. Montgomery was not under oath. Undisputedly Ms. Montgomery was party to that

guardianship case, thus could not affect valid service even if she had attempted to do so, which she did not. Notice is a fundamental component of Due Process. [ER-241, orig. FAC ¶ 54]

### 3. Defendants' Key Omission – Knowledge and Concealment That DCFS Had Cleared Mark Augustus Five Days Prior

As troubling as are Defendants' misrepresentations, the key omission is even more problematic: Both Spiller and Montgomery knew and concealed from the Superior Court the fact that, by Dec. 11, 2018, the date of the hearing in question, Mark Augustus had been cleared by DCFS of the one vague allegation against him. [ER-251, orig. FAC ¶ 97]

The fateful hearing occurred on December 11, 2018, which is 5 days *after* the DCFS closed its investigation and exonerated Mark Augustus of the false allegation. Mr. Spiller knew the DCFS Report was issued, knew that it exonerated Mark Augustus, and knew that parties were under orders to produce it for the hearing. Thus, when Mr. Spiller said there "are" allegations, he was lying. There "was" an allegation, which allegation had been investigated and closed at the time Mr. Spiller made his demonstrably false statement. [ER-252, orig. FAC ¶ 99]

Spiller knew that Mark Augustus had not been served, because there was no proof of service filed. Thus, Spiller knew that Mark Augustus was not "on the lam", and was not avoiding the proceedings, as Spiller falsely stated. Mr. Spiller knew that Mark Augustus was not present at the December 11, 2018 hearing for a much more obvious and sinister reason – he had not been served Notice. [ER-252, orig. FAC ¶ 100]

The *Benavidez* Court goes on to explain:

> To support a 42 U.S.C. § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding. A plaintiff who provides direct evidence of false statements can allege deliberate fabrication of evidence in violation of constitutional due process guarantees.

[*Benavidez, supra* 993 F.3d 1134 at1140]

Since both Spiller and Montgomery knew their statements were false, it can only be concluded that they acted deliberately or recklessly. Furthermore, the issue of Notice is material to *any* proceeding. And, the issue of the prior allegation against Mark Augustus was certainly material to the temporary guardianship proceeding, it being *the only issue* upon which the entire guardianship was premised. [ER-252, orig. FAC ¶ 99]

Therefore, this Court should find that the FAC alleges that Defendants committed both misrepresentations and material omissions sufficient to support a § 1983 Due Process claim under *Benavidez.*

### 4. Both Spiller and Montgomery are De-Facto State Actors Under the Joint-Action Test

In dismissing the case, the District Court found that:

> Plaintiffs have failed to plead facts sufficient to show Defendant Spiller and Montgomery were joint actors with the County. Plaintiffs have not sufficiently alleged a conspiracy between the County and Montgomery or Spiller because the Complaint includes no facts showing a "meeting of the minds," such that each participant "share[d] [a] general conspiratorial objective." *Fonda*, 707 F.2d at 438; *Tsao*, 698 F.3d at 1140. Nor do Plaintiffs plead facts showing Montgomery or Spiller were "willful participant[s] in joint action" with the County. *Tsao*, 698 F.3d at 1140.

[ER-17, orig. 15:9-16]

### 5. Direct Engagement of County's Child Abduction Unit Is Joint Action Under *Howerton v. Gabica*

Only by ignoring the facts can the District Court conclude there was no "meeting of the minds," nor that Spiller and Montgomery were "willful participants" in joint action with County. The *Fonda* case, upon which the District Court relies, explains why joint action applies here. Citing *Howerton v. Gabica,* 708 F.2d 380, slip op. 2118 (9th Cir. 1983), *Fonda* explains that:

> In *Howerton,* the defendants, husband and wife, were found to have acted under color of law when they **directly engaged the police** to

> aid them in evicting a tenant, the plaintiff in the action. The evidence showed that the defendants "deliberately cloaked themselves with the authority of the state in effecting repossession of the trailer premises."

[*Fonda v. Gray*, 707 F.2d 435, 437-438]

Just as in *Howerton*, where joint action was found, here Defendants Spiller and Montgomery directly engaged County Child Abduction Unit to aid them in procuring the child from the school. Later on the same day as the secret, unnoticed Temporary Guardianship Hearing, Plaintiff Donecia Augustus and Defendant Shaunta Montgomery separately arrived at the minor child Sasha's school, each with the intention of picking Sasha up. Montgomery arrived with the fraudulently-obtained Temporary Guardianship papers in hand. [ER-231, orig. FAC ¶ 5, and see also ER-242, orig. FAC ¶ 58].

Montgomery was accompanied by agents of the Los Angeles County District Attorney Child Abduction Unit, who were prepared to use whatever level of force was necessary to compel compliance with the fraudulently-obtained Letters of Temporary Guardianship order. [ER-242, orig. FAC ¶ 59]. Out of fear of the power and force of the County of Los Angeles, Donecia Augustus "allowed" Sasha to leave with Montgomery. [ER-242, orig. FAC ¶ 60].

Implementing County's Child Abduction Unit was at the behest of Spiller, who not only did it in this case, but by Spiller's admission, "**We** have done that [implemented County Child Abduction Unit] before in guardianship cases." [ER-239, orig. FAC ¶ 45, citing ER-290, orig. EXHIBIT D to FAC, 7:25-8:1, emphasis added].

In the preceding quotation, in saying "we", William Spiller Jr. was referring to himself and the Los Angeles County Child Abduction Unit working together in joint action. [ER-239, orig. FAC ¶ 46].

This Court should find that Defendants Spiller and Montgomery directly engaging County Child Abduction Unit is legally identical to private actors in

*Howerton* directly engaging police officers, thereby satisfying the joint action test on that basis. Certainly there was a "meeting of the minds." However, this is not the only basis to find joint action. Far from it.

### 6.     This Case is Distinguishable from Other Cases Where Joint Action Was Denied

In trying to show that the FAC is conclusory and insufficient to meet the pleading standard, the District Court recites only that "County receives federal funds under the Child Welfare Act, that Montgomery was 'desperate for a child' (FAC ¶ 3), and that Spiller had an 'intent to enrich himself on County money,' (*id.* ¶ 43)." [ER-17, orig. 15:16-18].

If those were the only facts Plaintiffs had brought to show the meeting of the minds and shared conspiratorial objective between County, Spiller and Montgomery, then Plaintiffs would agree with the District Court, and we would not be here.

However, in addition to Defendants directly engaging County Child Abduction Unit, Appellants now present additional facts and additional argument, which will demonstrate additional bases for this Court to find that the Joint Action test is satisfied, thus Spiller and Montgomery should be held as de-facto State Actors for civil rights purposes.

In moving to dismiss, Spiller cited *Polk County v. Dodson*, 454 U.S. 312, 325, (1981) ("*Polk County*"). [see ER-195]. In *Polk County*, a prisoner brought a § 1983 claim which claimed the attorney was a state actor by virtue of employment through the county. [*Polk County, supra,* at 315].

Here, it is true that the FAC alleges that County pays Spiller, on a regular basis. In fact, a June 5, 2019 Standing Order establishes an escalating payment ceiling levels for the amount of money that minor's counsel can receive in a given case, based on how long the case litigates. For a minor's counsel, e.g. William Spiller Jr., the goal of the Policy (allowing Judicial Deception) clearly appears to

be to litigate long enough to reach "LEVEL SIX", because that level **has no cost ceiling**. [ER-240-241, orig. FAC ¶ 50, see also ER-371-372, orig. EXHIBIT "I" to FAC].

However, the similarity between this case and *Polk County* ends with the fact that both public defender there, and Minor's Counsel here, are paid by County. Unlike the instant case, nowhere did the party in *Polk County* allege Judicial Deception by concealment of key exonerating evidence, nor lack of Notice, nor misrepresentations about Notice, nor misrepresentations about party being "on the lam" nor anything else that would allow this Court to find a similarity between the two cases.

Spiller disingenuously argued that, like the public defender in *Polk County*, he should be immune from civil rights liability. In *Polk County,* the prisoner wished to appeal his conviction, and his court-appointed attorney found the appeal to be frivolous. In *Polk County,* the Court correctly found that the public defender's "**only connection** to the county was payment of legal fees." [ER-195, orig. 23:1-4, bolding added].

### 7. This Case is Very Similar to Other Cases in Which Joint Action Was Found

Here, if Spiller's "only connection" to County was the payment of his fees, the District Court's dismissal may have been proper. But, while the payment is certainly the prime motivating factor for Spiller, it is hardly the only connection between him, County and Montgomery.

Indeed, Joint Action can exist even *with* a public defender, if the public defender conspires with other state officials during the course of a criminal prosecution. [See *Tower v. Glover*, 467 U.S. 914, 919–20 (1984)]

Consistent with *Tower v. Glover,* Joint Action must apply to Spiller and to Montgomery, not merely because County is paying Spiller, and not just because Spiller and Montgomery both directly engaged County Child Abduction Unit,

although that is surely enough for this Court to find Joint Action. A finding of Joint Action is also appropriate because Spiller and Montgomery conspired *with County* to do bad things, like seizing children from kind and loving parents upon false pretext so as to be paid. [ER-231-232, FAC ¶¶ 1- 11]

A private person who conspires with a state actor is a state actor for the purpose of the alleged conspiracy. [*Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (holding that private parties who corruptly conspired with a state judge acted "under color of law")]

Moreover, a private person who acts as an agent of the state acts under color of law. [*Adickes v. Kress & Co.,* 398 U.S. 144, 152 (1970) (stating that action is "under color" if person is a "willful participant in joint activity with the State or its agents")

Here, Spiller is most certainly acting as an agent of County, and demonstrates a "meeting of the minds." because together they conspire to execute County's policy and custom, allowing for fraudulent representations to be made as a false pretext on which to seize children. [ER- 247, orig. FAC ¶ 78]. Spiller is also acting as an agent of County because Spiller directly engaged the County Child Abduction Unit, not only in this case, but also in other cases, by his own admission. [ER-239, orig. FAC ¶ 45, citing ER-290, orig. EXHIBIT D to FAC, 7:25-8:1]

### 8.   Under *Lugar*, Spiller and Montgomery are Willful Participants in Joint Action with County

Where "the state has so far insinuated itself into a position of interdependence with the [defendant] that it was a joint participant in the enterprise." [*Focus on the Family v. Pinellas Suncoast Transit Auth*., 344 F.3d 1263, 1267 (11th Cir. 2003) ("*Focus*")]. A court will examine whether the government and the acting party are "intertwined in a symbiotic relationship," as well as whether the relationship involves "the specific conduct of which plaintiff complains." [*Id*]

The U.S. Supreme Court has found that under the "joint action" test a private party can be fairly said to be a state actor where a private party is a "willful participant in joint action with the State or its agents." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 923, 102 S. Ct. 2744, 2746 (1982) ("*Lugar*").

The present case against Ms. Montgomery and Mr. Spiller is legally identical to *Lugar*, as the following detailed analogy shows. In *Lugar*, a private actor engaged the County to seize property in satisfaction of an alleged debt, by stating a:

> …belief that the debtor was disposing of or might dispose of his property in order to defeat his creditors. Acting upon the petition, a clerk of the state court issued a writ of attachment, which was then executed by the county sheriff which effectively sequestered the debtor's property…

[*Lugar, supra,* 457 U.S. 922 at 923]

Here, just like *Lugar,* private actor Ms. Montgomery and William Spiller Jr. engaged the County, including but not necessarily limited to invoking the power and authority of the Los Angeles County District Attorney Child Abduction Unit to seize Sasha from Santa Monica High School, by falsely stating an alleged belief that Mark Augustus was a danger to Sasha. [ER-245, orig. FAC ¶ 70].

When the DCFS Report came back exonerating Mark Augustus, Ms. Montgomery and Spiller and County faced the prospect that their plan to take Sasha would collapse. This necessitated the escalation of the scheme to fraudulently claim that Plaintiffs Donecia and Mark Augustus were "on the lam," and "homeless," and that they had been given notice of the December 11, 2018 hearing – fraudulent representations one and all. [ER-245, orig. FAC ¶ 71].

In *Lugar* the private party argued that they were not acting under color of law. But the Supreme Court rejected the argument, finding that a:

> "…private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment."

[*Lugar, supra,* 457 U.S. 922 at 923]

Likewise, here Mr. Spiller and Ms. Montgomery jointly participated with County in the unwarranted seizure and taking of Sasha on December 11, 2018 at Santa Monica High School. In *Lugar* the State had issued a writ of mandate under a false pretext, just like here, where the State issued a Temporary Guardianship under false and fraudulently-obtained pretext. The *Lugar* Court found a sufficient nexus between the private actor's conduct of engaging government officials on the one hand, and the subsequent seizure of property on the other hand, so as to find a "joint action" for Section 1983 purposes.

The facts alleged against Mr. Spiller and Ms. Montgomery in the present matter are thus *more* egregious than those in *Lugar*, and joint action is more easily found.

First, this case involves the destruction of the fundamental right to parent, not merely the destruction of property rights as in *Lugar*. Second, here there were no facts properly before the Superior Court that even arguably justified the seizure of Sasha from her parents. Mark Augustus *had already been exonerated,* but Defendants fraudulently concealed this from the Superior Court.

Moreover, it is worth emphasizing that here, as in *Lugar*, the private actor's conduct engaging government officials worked to the mutual benefit of Mr. Spiller, Ms. Montgomery and County: Mr. Spiller was appointed as minor's counsel and subsequently was paid for hundreds of hours of "service," even reaching "Level Six" with no ceiling on payment; Ms. Montgomery got the child she had always wanted without having to go through the expense or trouble of an adoption; County received taxpayer funding (whether Title IV federal funding or otherwise) and justified an increase in funding based on the need to retain Mr. Spiller's "services." [See ER-349 et. seq., orig. EXHIBIT "H" to FAC].

### 9. Spiller Seemingly Admits the Policy to Defraud

Shockingly, Spiller argued that:

> If Plaintiffs' joint action and symbiotic relationship allegations were deemed plausible, then there is not a single probate guardianship proceeding where the same accusations could not be levelled against any court-appointed counsel.

[ER-197, orig. 17:22-24]

Spiller's argument is simply not true: the same allegations of defrauding the court with false allegations certainly need not be applied to every single probate guardianship. Plaintiffs do not believe, and need not allege that every single guardianship is fraudulent. There absolutely are many cases, probably the majority of cases, which are legitimate. Whether the guardianship is over a minor child, a disabled adult, or someone else, there certainly are many circumstances where guardianships are warranted.

Nonetheless, read correctly, Spiller makes a very important admission. In saying that the "same accusations" – i.e. executing County's Policy of creating false and fraudulent pretexts on which to seize children - could apply to other cases, Spiller appears to **admit that such Policy exists**.

Far from implausible, then, the alleged Policy is consistent with the facts herein, and consistent with Spiller's statement that the same allegations apply to other cases – not every other case as Spiller hyperbolizes, but many. Plaintiffs are confident that Discovery will reveal many more instances of the implementation of the Policy.

### 10. Spiller and Montgomery Have a Symbiotic Relationship With County

Under the "symbiotic relationship" test a private party can be fairly said to be a state actor where "the state has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint

participant in the challenged activity." [*Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)].

Here, the benefits obtained by County, by Spiller and by Montgomery are indeed interdependent. County derives its funding based on "need," i.e. the more Minor's Counsel, the more need. Spiller and Montgomery conspire and agree to issue the false allegations as a false pretext on which to obtain a temporary guardianship, because otherwise there would be no pretext on which to issue a Temporary Guardianship, nor to appoint minor's counsel.

Ms. Montgomery cannot obtain a child by adoption, presumably because she does not have the necessary financial resources to do so. Mr. Spiller, an attorney disciplined by the Bar for fraudulently losing cases on purpose, cannot get a job in any area other than minor's counsel, because he would bring disrepute on any law firm. Both Spiller and Montgomery are thus an interdependent fit for County's policy and custom of allowing for fraudulent representations to be made to the courts as a false pretext on which to seize children.

County has so far insinuated itself into a position of interdependence with William Spiller and Shaunta Montgomery that County's financial goals – as described in the Auditor-Controller's Report. [ER-349 et. seq., orig. Exh. "H," to FAC] These goals cannot be realized without Spiller and Montgomery (and others similarly inclined), while Spiller's goals of earning big money as a lawyer and Montgomery's goals of having a child cannot be realized without the conspiratorial cooperation of the County of Los Angeles, including (but not necessarily limited to) the Los Angeles County Child Abduction Unit.

State action exists when the state (County) has so far insinuated itself into a position of interdependence with the acting party(ies). It must be recognized as a joint participant in the challenged activity, which cannot be considered to have been so "purely private" as to fall outside of the scope of U.S. Const. amend. XIV. [*Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 95 (3d Cir. 1984)]

### 11. Conclusion to De-Facto State Actor

Therefore, this Court should find that the factual allegations here satisfy the Joint Action test, such that Mr. Spiller and Ms. Montgomery will be considered State Actors for Section 1983 purposes. For this reason, this Court should find that the District Court erred in finding otherwise.

## C. The District Court Erred by Dismissing the Constitutional Challenge to Cal. Probate Code § 2250 (e)(1)

### 1. Prima Facie Showing That the Statute is Facially Unconstitutional

In the FAC, at the Fourth Cause of Action, Plaintiffs invoke the Declaratory Judgment Act, suing State of California and seeking a judicial declaration that Cal. Probate Code § 2250 (e)(1) is facially unconstitutional - void for vagueness and otherwise in violation of Due Process. [ER-256]

California Probate Code § 2250 (e)(1) violates Due Process on its face by allowing a judge to dispense with Notice requirements on a Temporary Guardianship hearing for **no stated reason at all**. It is also unconstitutionally vague.

California Probate Code provides, in relevant part, that:

> **Unless the court for good cause otherwise orders**, at least five court days before the hearing on the petition [for Temporary Guardianship], **notice** of the hearing **shall** be … personally delivered … to the parent or parents of the proposed ward.

[Cal. Probate Code § 2250 (e)(1), emphasis added.]

As to what may constitute "good cause" to dispense with the notice requirements to parents of a pending petition for Temporary Guardianship, the statute rather cryptically states:

> On or before January 1, 2008, the Judicial Council shall adopt a rule of court that establishes uniform standards for good cause exceptions to the notice required by subdivision (e), limiting those exceptions to only cases when waiver of the notice is essential to

> protect the proposed conservatee or ward, or the estate of the proposed conservatee or ward, from substantial harm.

[Cal. Probate Code § 2250 (k), bolding added]

As Appellants read the statute, it does not presently guarantee that waiver of notice is limited to the prevention of substantial harm, only that the Judicial Council was instructed to adopt a rule of court to that effect by 2008.

If the Judicial Council ever did adopt such a rule as contemplated in § 2250 (k), it certainly isn't reflected in the Judicial Council GC-140 form utilized in the Augustus case, which cites § 2250, but says nothing about "substantial harm", or about what might or might not constitute "good cause" for waiving the notice requirements. Instead, the form as filled out by Judge May on December 11, 2018 reads, in relevant part:

> The Court finds **notice** of the time and place of hearing **has been dispensed with** for Mark Augustus (father) and Donecia Augustus (mother).

[ER-267, orig. Exhibit "A" to FAC, bolding added]

Thus, the Judicial Council did not adopt a rule of court that establishes uniform standards for good cause exceptions to the notice required, and did not limit those exceptions to only cases when waiver of the notice is essential to protect the proposed ward from substantial harm.

There certainly was no risk of substantial harm to Sasha on December 11, 2018, as her kind and loving father Mark Augustus was exonerated of the one vague allegation five days prior. [ER-257, orig. FAC ¶ 132]

Judge May did not state any "good cause" for "dispensing with" the notice requirements. [see ER-267, orig. Exhibit "A" to FAC]

It is surely true that Judge May found "good cause" to "dispense with" both parents' right to Notice, as evidenced by nothing less and nothing more than the check box on the GC-140 form. [*Id*]

The constitutional problem is that the statute and the Judicial Council form do not require anything besides a check mark on a form. There is no requirement for a finding that the proposed ward (here, Sasha) is at risk of substantial harm. There is no standard for "good cause" *at all*.

The U.S. Supreme Court has explained that "[V]agueness may invalidate a law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits. Second, it may authorize and encourage arbitrary and discriminatory enforcement." [*City of Chicago v. Morales*, 527 U.S. 41, at 56 (1999), and see also *Johnson v. United States*, (2015) 135 S.Ct. 2551 (striking a severable portion of a criminal statute for vagueness); and *Sessions v. Dimaya*, (2018) 138 S.Ct. (striking a severable portion of a civil statute for vagueness)]

Clearly, Cal. Probate Code § 2250 (e)(1) fails to provide the kind of notice that will allow ordinary people to understand what judicial conduct it prohibits. All that is necessary is for a judge to check off a check box, and that constitutes "good cause" to "dispense with" both parents right to be notified that their child is about to be taken and given to someone else.

The challenged statute authorizes arbitrary and discriminatory enforcement, as occurred in the guardianship case presently at issue, resulting in severe constitutional injury to Donecia and Mark Augustus.

Thus, under either or both of the tests articulated in *City of Chicago v. Morales, supra,* the Court should issue a Declaratory Judgment and opinion that California Probate Code § 2250 (e)(1) is unconstitutionally void for vagueness on its face, and that it violates substantive Due Process.

### 2. Prima Facie Showing That the Statute Is Unconstitutional as Applied to Mark and Donecia Augustus on December 11, 2018

In the FAC, at the Fifth Cause of Action, Plaintiffs invoke the Declaratory Judgment Act, suing State of California and seeking a judicial declaration that Cal.

Probate Code § 2250 (e)(1) is unconstitutional as applied in the Augustus case. [ER-258]

The United States Supreme Court unambiguously finds the right to parent to be a fundamental constitutional right, and explicitly holds that:

> The liberty protected by the Due Process Clause of the United States Constitution includes the right of parents to establish a home and bring up children and to control the education of their own.

[*Troxel v. Granville*, 530 U.S. 57, 60, 120 S. Ct. 2054, 2057 (2000) ("*Troxel*")]

By not requiring Notice to parents, Cal. Prob. Code § 2250 (e)(1) violates Due Process on its face. [Supra] Assuming for sake of discussion that "good cause" to do away with the Notice requirements is sufficiently defined on the face of the Statute, it certainly was applied to Donecia and Mark Augustus in a manner that deprived them of their Due Process rights.

On December 11, 2018 a secret Temporary Guardianship hearing took place, at which an Order was made allowing 15-yeard old Sasha to be seized from her school, and taken away from her kind and loving, legally married biological parents, 5 days after the father was exonerated of the one vague allegation against him.

The "good cause" to "dispense with" Notice and conduct a top secret, unnoticed Temporary Guardianship hearing was nothing more than a checkbox on a court form. No further explanation was given for doing away with Notice.

Therefore, the Court should issue a Declaratory Judgment and opinion that California Probate Code § 2250 (e)(1) unconstitutionally violated substantive and/or procedural Due Process as applied to Donecia and Mark Augustus.

### 3. The District Court Did Not Reach the Merits of the Constitutional Challenge to the Statute

The District Court's Order of Dismissal explains:

> On December 10, 2021, the State of California filed a Motion to Dismiss the FAC on the grounds that the state is immune from suit under the Eleventh Amendment. See generally State's Motion.

> Plaintiffs did not file a timely opposition. Pursuant to Local Rule 7-12, "**[t]he failure to file any required document … <u>may</u> be deemed consent to the granting or denial of the motion**…." A party's failure to follow a district court's local rules is a proper ground for dismissal. *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).

[ER-19, orig. 14:16, emphasis added]

By use of the word "may," Local Rule 7-12 holds that it is *discretionary* whether or not to deem Plaintiffs to have "consented" to dismissal when their Opposition to a Motion to Dismiss is untimely. Under *Ghazali,* before dismissing the action, the District Court was required to weigh several factors:

> (1) the public's interest in expeditious resolution of litigation;
>
> (2) the court's need to manage its docket;
>
> (3) the risk of prejudice to the defendants;
>
> (4) the public policy favoring disposition of cases on their merits; and
>
> (5) the availability of less drastic sanctions.

[*Id*]

This Court can see that the District Court clearly did *not* weigh the *Ghazali* factors. Here is the District Court's statement in its entirety:

> On August 26, 2022, Plaintiffs filed an Ex Parte Application for Leave to File Untimely Opposition to the State's Motion ("Application"). Dkt. 109. Plaintiffs did not cite any legal authority in support of the Application, or to establish that their counsel's failure to draft and file an Opposition to the State's Motion to Dismiss constitutes grounds for the requested ex parte relief. Furthermore, Plaintiffs did not offer any explanation for why they did not seek leave to file an Opposition to the State's Motion to Dismiss at an earlier time, or state any facts to show diligence during the intervening eight months. The court, therefore, denied Plaintiffs' Application.

[ER-19, orig. 19:25-20:5]

As to *Ghazali* factor (1), on August 31, 2022 the District Court denied Plaintiffs leave to file an Untimely Opposition to State's Motion to Dismiss the constitutional challenges to the statute. [See Doc. # 115].

Nevertheless, the Order dismissing the case did not occur until March 24, 2023, some *seven months after* Plaintiffs sought and were denied leave to file an Opposition to State's Motion to Dismiss the constitutional challenges. ***Seven months***.

Therefore, this Court should find that the public's interest in expeditious resolution of litigation was not served by dismissing the constitutional challenge to the statute.

As to *Ghazali* factor (2), the District Court gives no indication as to how dismissing the constitutional challenge to the statue served managing its docket. On October 6, 2022 and October 11, 2022, the District Court struck Requests for Ruling on Motions to Dismiss filed by Defendants, seeking to expedite the ruling on all the Motions to Dismiss, including State's Motion to Dismiss the constitutional challenges to the statute [See Docs. # 118 and # 119]

Thus, if anything caused the docket to become more crowded, it was the District Court's refusal to rule for so long, rather than Plaintiffs' untimely Opposition.

As to *Ghazali* factor (3), Defendant here is State of California, being asked to respond to constitutional challenges to a statute. The District Court does not attempt, let alone succeed to explain how State might somehow be prejudiced by allowing Plaintiffs to Oppose their Motion to Dismiss.

As to *Ghazali* factor (4), public policy does favor deciding a case on the merits **wherever possible**. It was certainly possible here, where Plaintiffs submitted their fully-drafted Opposition as an exhibit to the ex parte Request for Leave to File Untimely Opposition [see ER-32 et. seq.], and where the District Court still did not rule for *seven more months.* Clearly this factor mitigates strongly

in favor of deciding State's Motion to Dismiss on the merits, rather than dismissing it on procedural grounds.

As to *Ghazali* factor (5), less drastic sanctions than a dismissal were surely available. State does not even allege that it incurred unnecessary attorney fees. But even if it had, a sanction of an attorney fee award should have been more than adequate to address whatever injury State might have contended it suffered as a result of Plaintiffs' untimely opposition to their Motion to Dismiss.

### 4. Conclusion to *Ghazali* Factors

Therefore, this Court should find that the Ghazali Factors strongly favor allowing Plaintiffs to have Opposed State's Motion to Dismiss. This Court should reverse, allow the filing of Plaintiffs' Opposition, and now require the District Court to rule on the merits.

## VI. OVERALL CONCLUSION AND RELIEF REQUESTED

In light of the foregoing, this Court should reverse and remand for further proceedings, issuing an Opinion finding that:

• the District Court erred by dismissing this civil rights case alleging a Due Process violation, where custody of minor child was taken from parents at a hearing for which Notice was undisputedly not served upon parents;

• under the standard for Judicial Deception articulated in *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021), the District Court erred by dismissing a civil rights case alleging a Due Process violation, where custody of a minor child was taken from parents at a Temporary Guardianship hearing where Defendants knew, but fraudulently concealed, the material fact that father had been officially cleared of the one vague allegation against him *five days prior*;

• under the *Benavidez* standard for Judicial Deception, the District Court erred by dismissing a civil rights case alleging a Due Process violation, where custody of minor child was taken from parents at a Temporary Guardianship

hearing where Defendants falsely stated that parents were "on the lam" and "avoiding the proceedings," when in fact, they simply had not been served;

• the District Court erred by improperly applying a summary judgment standard (instead of the standard for a Motion to Dismiss), which led to the erroneous finding that Plaintiffs did not plausibly allege a Policy of Los Angeles County under which Judicial Deception may be employed as a false pretext to appoint a Minor's Counsel; and

• the District Court erred by finding that Minor's Counsel William Spiller Jr. and Shaunta Montgomery are not de-facto State Actors for civil rights purposes.

Thus, for any or all of the foregoing reasons, the dismissal of this case should be reversed and remanded for further proceedings, with instructions that Defendants must file an Answer to the Complaint by date certain.

Moreover, this Court should find that the Appellants have made a prima facie showing that Cal. Probate Code § 2250 (e)(1) District Court is unconstitutional, either facially and/or as applied, because it allows for the Court to "dispense with" Notice for no stated reason whatsoever.

For this reason, this Court should remand the constitutional challenge back to the District Court, with instructions that Plaintiffs may file their Opposition to State's Motion to Dismiss, and that the District Court shall issue a substantive ruling by date certain.

At the bare minimum, this Court should find that Plaintiffs should be given leave to amend the complaint.

Respectfully submitted,

_____

G. Scott Sobel

Attorney for Appellants

## VII.   CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,436 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman 14-point font.

Respectfully submitted,

G. Scott Sobel

Attorney for Appellants

# PROOF OF SERVICE

I am a licensed attorney, SBN 124818. I represent the plaintiffs in the above-entitled matter. I am familiar with the facts stated below. If called to testify, I could and would testify competently thereto. On August 7, 2023 I served the following document(s):

**APPELLANTS' OPENING BRIEF**

The document(s) were served on the following parties and/or attorneys of record:

Ms. Anita Susan Brenner: info@torresbrenner.com
Sarah Lee Overton, Attorney: soverton@cmda-law.com, capacible@cmda-law.com, squesada@cmda-law.com
Mr. Andrew Z. Edelstein: andrew.edelstein@doj.ca.gov
Mr. Mark E. Lowary: melowary@b3law.com,
 asedler@b3law.com, dhryan@b3law.com
Brian T. Gravdal: bgravdal@b3law.com, asedler@b3law.com
Kacey McBroom <kmcbroom@kaedianllp.com>,
Henry Whitehead <hwhitehead@kaedianllp.com>,
"Connie S. Johnson" <csjohnson@b3law.com>,
Sharon Bruner sbruner@b3law.com
Neil G. MacMillan: ngmacmillan@b3law.com


The document(s) were served by the following means:
**Electronic service** - by transmitting via electronic mail the document(s) listed above to the following e-mail addresses set forth below as registered with the court's case management electronic court filing system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

August 7, 2023

_____
G. Scott Sobel, Esq.